Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000747
22-FEB-2018
08:40 AM

NO. CAAP-15-0000747

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STELLA H. TAVARES, Plaintiff-Appellant,
v.
UNIVERSITY OF HAWAII; ROCKNE FREITAS,
Defendants-Appellants
and
DOE PERSONS 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; ROE "NON-PROFIT" CORPORATIONS 1-10,
AND ROE GOVERNMENTAL ENTITIES 1-10,
Defendants


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 08-1-0248)


SUMMARY DISPOSITION ORDER
(By: Nakamura, Chief Judge, Reifurth and Chan, JJ.)

This appeal arises out of a wrongful termination suit by Plaintiff-Appellant Stella H. Tavares (Tavares) against her former employer, Defendants-Appellees University of Hawaii and Rockne Freitas (collectively, UH). Tavares appeals from the Final Judgment entered by the Circuit Court of the Third Circuit (circuit court)[1] on September 17, 2015, in favor of UH as to all claims and issues between Tavares and UH in this action.

On appeal, Tavares contends that the circuit court erred in entering summary judgment in favor of UH as to Tavares's

---

[1] The Honorable Glenn S. Hara presided.

discrimination and defamation claims.[2]  Specifically, Tavares contends that the circuit court erred in concluding that an arbitration award arising from an arbitration between the Hawaii Government Employees Association, on behalf of Tavares, (Union) and UH (Union-UH arbitration award) had a preclusive effect on Tavares's statutory discrimination and tort claims against UH in the instant case.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we affirm.

I.    **Preclusive Effect of Union-UH Arbitration Award**

Tavares contends that the circuit court erred in concluding that the Union-UH arbitration award had a preclusive effect on Tavares's statutory discrimination and tort claims at the hearing on UH's motion for summary judgment (MSJ).  However, we conclude that this contention is without merit.

We first note that pursuant to Rule 10(b)(1)(A) of the Hawai'i Rules of Appellate Procedure (HRAP), when an appellant raises a point of error that requires consideration of the oral proceedings before the court appealed from, the appellant must request transcripts of the relevant proceedings.  Here, the record does not contain any transcripts of the MSJ hearing or a request by Tavares for transcripts.  In addition, Tavares's opening brief does not correctly cite to where in the record the alleged point of error occurred.  See HRAP Rule 28(b)(4).[3]

We reject Tavares's point of error based on the record before us because it does not appear that the circuit court concluded that the Union-UH arbitration award had a preclusive effect on Tavares's claims.  On appeal, we review de novo the

---

[2]  The "Order Granting Defendants' University of Hawaii and Rockne Freitas' Motion for Summary Judgment Filed on April 1, 2015" (Order Granting MSJ) also disposed of Tavares's negligent infliction of emotional distress claim.  However, on appeal, Tavares only appears to challenge the granting of summary judgment in favor of UH as to her discrimination and defamation claims.

[3]    Tavares's counsel is warned that, pursuant to HRAP Rule 51, future non-compliance with HRAP Rule 28(b) may result in sanctions against him.

circuit court's award of summary judgment in favor of UH.  See
Shoppe v. Gucci Am., Inc., 94 Hawai'i 368, 376, 14 P.3d 1049,
1057 (2000).

II.  Discrimination

Under Section 378-2(a)(1)(A) (2015) of the Hawaii
Revised Statutes (HRS), "[i]t shall be an unlawful discriminatory
practice[,] [b]ecause of race, sex including gender identity or
expression, . . . [f]or any employer to . . . discharge from
employment . . . any individual[.]"

In Shoppe v. Gucci America, Inc., 94 Hawai'i 368, 14
P.3d 1049 (2000), the Hawai'i Supreme Court set forth a
three-step analysis for discrimination claims under HRS Chapter
378, applying the test adopted in McDonnell Douglas Corp. v.
Green, 411 U.S. 792 (1973).

> First, the plaintiff must establish a prima facie case of
> discrimination by demonstrating, by a preponderance of
> evidence, the following four elements: (1) that plaintiff is
> a member of a protected class; (2) that plaintiff is
> qualified for the position for which plaintiff has applied
> or from which plaintiff has been discharged; (3) that
> plaintiff has suffered some adverse employment action, such
> as a discharge; and (4) that the position still exists.

Shoppe, 94 Hawai'i at 378, 14 P.3d at 1059.

"Once the plaintiff establishes a prima facie case of
discrimination, the burden of production shifts to the defendant
to articulate a legitimate, nondiscriminatory reason for the
adverse employment action."  Id.  In this second step of the
Shoppe-McDonnell test, "[t]he employer's explanation must be in
the form of admissible evidence and must clearly set forth
reasons that, if believed by the trier of fact, would support a
finding that unlawful discrimination was not the cause of the
challenged employment action."  Id.  "Although the burden of
production is shifted to the employer, the ultimate burden of
persuading the trier of fact that the employer intentionally
discriminated against the plaintiff remains at all times with the
plaintiff."  Id. at 378-79, 14 P.3d at 1059-60 (alteration,
internal quotation marks, and citations omitted).

"[I]f the employer rebuts the prima facie case, the
burden reverts to the plaintiff to demonstrate that the

defendant's proffered reasons were 'pretextual.'" <u>Id.</u> at 379, 14 P.3d at 1060. In this third step, a plaintiff may establish pretext by "persuading the court that a discriminatory reason more likely motivated the employer or ... by showing that the employer's proffered explanation is unworthy of credence." <u>Id.</u> "If the plaintiff establishes that defendant's proffered reasons were pretextual, the trier of fact may, but is not required to, find for the plaintiff. At all times, the burden of persuasion remains on the plaintiff." <u>Id.</u> (citing <u>Sam Teague, Ltd. v. Hawai'i Civil Rights Comm'n</u>, 89 Hawai'i 269, 279 n. 10, 971 P.2d 1104, 1114 n. 10 (1999).

### a. Prima facie case

In the present case, UH does not argue that Tavares has failed to establish a prima facie case of discrimination. In fact, in moving for summary judgment, UH conceded "that [Tavares] can establish a prima facie [case] of discrimination[.]" Because establishment of the first step of the <u>Shoppe-McDonnell</u> test is uncontested, for the purposes of this appeal, we assume that the elements of Tavares's prima facie case of discrimination have been satisfied.

### b. Legitimate, nondiscriminatory reason

UH argues that because the Union-UH arbitration award determined that Tavares's termination was supported by proper cause, the collateral estoppel effect of the confirmed award establishes that the UH satisfied its burden of showing a "legitimate, nondiscriminatory reason" for terminating Tavares.

The Hawai'i Supreme Court has held

> that the doctrine of collateral estoppel bars relitigation of an issue where: (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication [hereinafter, the collateral estoppel test].

<u>Dorrance v. Lee</u>, 90 Hawai'i 143, 149, 976 P.2d 904, 910 (1999).

With respect to the first element of the collateral estoppel test, Tavares, against whom collateral estoppel is asserted, seeks to relitigate the issue of whether she was

4

terminated for a legitimate, nondiscriminatory reason. The arbitrator determined that Tavares's termination was supported by proper cause, therefore, the issue Tavares now raises was clearly addressed in the Union-UH arbitration award.

Regarding the second element of the collateral estoppel test that there be a final judgment on the merits, the <u>Dorrance</u> court has noted that "an arbitration award that has been reduced to a judgment is a final judgment for purposes of collateral estoppel." <u>Id.</u> at 148, 976 P.2d at 909.

Here, the circuit court confirmed the Union-UH arbitration award by written order. However, there is no indication in the record that the order confirming the Union-UH arbitration award was ever reduced to a judgment. <u>See</u> HRS § 658A-25(a) (2016) ("Upon granting an order confirming . . . an award, the court shall enter a judgment in conformity therewith.").

Regardless, entry of a judgment is not necessary for an order confirming an arbitration award to have a preclusive effect. Pursuant to HRS § 658A-28(a)(3), an order confirming an arbitration award is directly appealable, and entry of a judgment is merely a ministerial act. Furthermore, in a dissenting opinion, Chief Justice Moon opined that even a judicially unconfirmed arbitration award may be given preclusive effect if it is final and not subject to change:

> the purpose of collateral estoppel is to prevent inconsistent results, prevent duplicative litigation, and promote finality and judicial economy. Thus, for purposes of collateral estoppel, the requirement of a final judgment ensures that the decision to be given preclusive effect is not tentative or subject to change. Therefore, to determine whether the arbitrator's decision in this case had preclusive effect on the trial court requires an examination as to whether the arbitrator's decision was tentative or subject to change.

This court has noted that:

> An arbitration award is considered to be final when consideration of the submitted issues has been concluded and a resolution reached. Although there is no requirement that the award be self-executing, and although "it is not faulty because litigation may ensue in enforcing it," it should be "sufficiently definite that only ministerial acts of the parties are needed to carry it into effect," and "clear enough to

5

> indicate unequivocally what each party is
> required to do."

Flores v. Barretto, 99 Hawaiʻi 270, 279-80, 54 P.3d 441, 450-51 (2002) (citations omitted).[4]

Therefore, we conclude that the order confirming the Union-UH arbitration award is a final judgment on the merits for collateral estoppel purposes.

With respect to the third element of the collateral estoppel test, it is clear that the issue of whether Tavares was terminated for a legitimate, nondiscriminatory reason was essential to the arbitration award, inasmuch as it was a factor in determining whether Tavares was terminated for proper cause.

Turning to the fourth and final element of the collateral estoppel test, we conclude that Tavares, the party against whom collateral estoppel is asserted, is in privity with the Union, a party to the prior arbitration.

"Under the doctrine of res judicata, the concept of privity is merely a word used to say that the relationship between the one who is a party of record and another is close enough to include that other within the res ajudicata." Aloha Unlimited, Inc. v. Coughlin, 79 Hawaiʻi 527, 537, 904 P.2d 541, 551 (App. 1995) (citation, internal quotation marks, ellipsis, and brackets omitted). "[I]t is not necessary that the party asserting issue preclusion in the second suit was a party in the first suit." Bremer v. Weeks, 104 Hawaiʻi 43, 54, 85 P.3d 150, 161 (2004) (citation omitted). Furthermore, courts have held that "[u]nion members are considered to be in privity with their union for purposes of collateral estoppel." City of San Antonio v. Cortes, 468 S.W.3d 580, 587 (Tex. Ct. App. 2015); cf. In re the Arbitration Between United Pub. Workers, Local 646 v. Cty. of Hawaiʻi-Holiday Pay (2003-022B), 125 Hawaiʻi 476, 485-86, 264 P.3d 655, 664-65 (App. 2011) (affirming the confirmation of an arbitration award in which the arbitrator found, in good faith,

---

[4]  The majority decision of Flores did not conflict with Chief Justice Moon's analysis that an unconfirmed arbitration award that is final and not subject to change is considered a "final judgment" for collateral estoppel purposes.

that the County of Hawaii and State of Hawaii were in privity for collateral estoppel purposes because of the contractual relationship among the employee group members and the parties' substantive legal relationship). Thus, a union arbitration may bar issues from being litigated by union members in subsequent litigation. See DaLuz v. Dep't of Correction, 746 N.E.2d 501, 505-06 (Mass. 2001) ("[U]nion members[] were in privity with their union" and collaterally estopped from relitigating issues decided in a union arbitration).

Here, we conclude that the relationship between Tavares and the Union was "close enough to include that other within the res ajudicata." See Aloha Unlimited, Inc., 79 Hawai'i at 537, 904 P.2d at 551. In the Union-UH arbitration, the Union was acting directly on behalf of Tavares in connection with her termination by UH. Tavares was also given an opportunity to testify during the arbitration process. Therefore, we reject Tavares's argument that collateral estoppel does not bar her from relitigating issues adjudicated by the arbitrator because she was not a party to the Union-UH arbitration or the subsequent court confirmation.

Accordingly, we conclude that the collateral estoppel effect of the confirmation of the Union-UH arbitration award satisfies UH's burden to show a legitimate, nondiscriminatory reason for terminating Tavares.

c.    Whether UH's reasons were "pre-textual"

Because UH, through the Union-UH arbitration award, rebutted any prima facie case of discrimination by establishing that its reason for terminating Tavares was legitimate and nondiscriminatory, the burden reverts back to Tavares to demonstrate that UH's reasons for terminating her were "pretextual." In order to establish pretext, Tavares was required to persuade the court that either UH was more likely motivated by a discriminatory reason or that UH's proffered explanation is unworthy of credence. Shoppe, 94 Hawai'i at 379, 14 P.3d at 1060.

In her opposition to UH's MSJ, Tavares did not argue

that a discriminatory reason more likely motivated UH to terminate her. Instead, she attempted to argue that UH's reasons for terminating her were not credible, alleging that the unauthorized materials on her computer were transferred there by mistake and/or tampered with by UH. However, because the arbitrator specifically found that UH's reasons for terminating Tavares were legitimate, we reject Tavares's allegations and conclude that Tavares failed to meet her burden of establishing a material factual issue regarding pretext.

Accordingly, we affirm the circuit court's granting of summary judgment in favor of UH as to Tavares's discrimination claim.

## III. Defamation

> To prove defamation, the plaintiff must establish four elements:
>
> (a) a false and defamatory statement concerning another;
>
> (b) an unprivileged publication to a third party;
>
> (c) fault amounting at least to negligence on the part of the publisher [actual malice where the plaintiff is a public figure]; and
>
> (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Beamer v. Nishiki, 66 Haw. 572, 578-79, 670 P.2d 1264, 1271 (1983) (citing Restatement (Second) of Torts § 558 (1977)). For the purposes of this appeal, we focus on element (a).

In Gold v. Harrison, 88 Hawaiʻi 94, 962 P.2d 353 (1998), the Hawaiʻi Supreme Court adopted a three-part test set forth by the Ninth Circuit for determining whether a statement was false and defamatory:

> (1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact[;] (2) whether the defendant used figurative or hyperbolic language that negates that impression [;] and (3) whether the statement in question is susceptible of being proved true or false.

Id. at 101, 962 P.2d at 360 (quoting Fasi v. Gannett Co., 930 F. Supp. 1403, 1409 (D. Hawaiʻi 1995)).

Here, Tavares's Complaint vaguely alleges that UH had "published, disseminated, and/or communicated and/or caused to be

published, disseminated and/or communicated, and/or ratified and adopted," false and defamatory statements regarding Tavares's employment. However, in her opposition to UH's MSJ, Tavares alleges only a single "defamatory act," which is a statement contained in a petition dated March 11, 2005. The petition, which is signed by nine faculty members of the Business Education Technology Division of Hawaiʻi Community College, states as follows: "We the undersigned full-time faculty members of the Business Education and Technology Division request that, regardless of the outcome of the current investigation, it is in the best interest of all parties involved that Ms. Stella Tavares NOT be reassigned to BEAT."

We conclude that this statement is not a false and defamatory statement on the basis that it neither asserts any objective fact, nor can be proven true or false. See id. The statement was merely a request that Tavares not be reassigned to the division she previously worked for, coupled with an opinion that accommodating such a request would be "in the best interest" of those involved. The statement did not contain any objective facts or allegations.

Because the only defamatory act alleged by Tavares is missing essential element (a), Tavares's defamation claim fails, entitling UH to summary judgment on this claim.

Based on the foregoing, the Final Judgment entered by the circuit court on September 17, 2015 is affirmed.

DATED: Honolulu, Hawaiʻi, February 22, 2018.

On the briefs:

Ted H.S. Hong,
for Plaintiff-Appellant.

Richard M. Rand,
(Marr Jones & Wang),
for Defendants-Appellees.

*Craig H. Nakamura*

Chief Judge

*Lawrence M. Reifurth*

Associate Judge

Associate Judge